# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS D. EVANS, and CARLA S. EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 1:19-CV-826 JLT BAM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 28) |

Lewis Evans and Carla Evans filed a complaint, on June 13, 2019, seeking recovery for property damage to their Kings Canyon Lodge located in the Sierra National Forest. (Doc. 1 at ¶ 1, 8.) The property damage resulted from a wildfire, known as the Rough Fire. (*Id.*) Plaintiffs claim the United States Forest Service acted negligently in the efforts to contain and suppress the Rough Fire and seek recovery under the Federal Torts Claims Act, 28 U.S.C. §§ 2671, *et seq.*

On September 16, 2019, the Government responded that the discretionary function exception bars recovery and raises questions of subject matter jurisdiction. (Doc. 8 at 7.) The parties conducted discovery limited to the discretionary function exception. (*See* Doc. 12 at 1-2.) The Government then filed the instant motion for summary judgment on subject matter jurisdiction on July 23, 2021. (Doc. 28.) For the reasons set forth below, the motion for summary judgment is **GRANTED**.

# I. BACKGROUND

The following facts are undisputed unless otherwise stated. Plaintiffs initiated a suit against the Government under the FTCA, alleging the Forest Service acted negligently during its response to the Rough Fire. (Doc. 1 at ¶ 1.) In July 2015, California experienced an extended period of drought which caused significant tree mortality and an intense wildfire season. (Doc. 31 at ¶¶ 4-5.) The Rough Fire commenced in July 2015 in the Sierra National Forest. (*Id.* at ¶¶ 9-10.) Plaintiffs owned the Kings Canyon Lodge in the Sierra National Forest, located at a bend in Highway 180, near the 10-Mile Creek. (*Id.* at ¶ 1.) The Rough Fire burned more than 140,000 acres before it was contained in September 2015. (*Id.* at ¶ 12.)

The Forest Service deployed a variety of efforts in attempts to suppress the Rough Fire. The parties dispute the extent and adequacy of those efforts to prevent the fire from spreading to the Kings Canyon Lodge. The Government contends hand crews and bulldozers constructed fire lines to the north and east of the Plaintiffs' property in early August 2015.[1] (Doc. 31 at ¶ 18.) Plaintiffs maintain that the Forest Service did not properly construct hand and dozer lines and did not tie them to the road. (*Id.*) Plaintiffs also allege the Incident Action Plans ("IAP") directed firefighters to complete "fire lines, dozer lines and prep the buildings" at the Kings Canyon Lodge. (Doc. 30 at 3-4, (Evans Decl. at ¶ 5).) The parties agree the firefighters could not complete at least one dozer line behind the house at Kings Canyon Lodge because the hill on the property was too steep for a bulldozer to traverse safely. (Doc. 31 at ¶ 50.)

Although the parties dispute the cause of the spread of the Rough Fire, they agree it spread near the parameter of the Kings Canyon Lodge on August 18, 2015. (Doc. 31 at ¶¶ 23-24.) The Forest Service deployed approximately 2,000 firefighting personnel to contain the spread. (*Id.* at ¶ 27.) For safety concerns, firefighting personnel eventually retreated from the Kings Canyon Lodge, unable to prevent the Rough Fire from burning across Plaintiffs' property. (*Id.* at ¶ 45.)

Plaintiffs brought suit under the FTCA to recover for the loss caused by the Rough Fire,

---

[1] Fire lines, such as hand lines and dozer lines, prevent the spread of wildfires by "removing vegetation along a wide line around the fire, such the fire could not cross it." *Taylor v. Workers' Comp. Appeals Bd.*, 196 Cal. Rptr. 182, 183 (Cal. Ct. App. 1983). Fire suppression techniques typically include "tying" or "anchoring" these fire lines to an existing structure, such as a road or creek, that is already clear of vegetation. (*See* Doc. 1-1 at 47.)

claiming property damages of $2,849,090.45. (Doc. 1 at ¶ 4.) Plaintiffs argue the Forest Service acted negligently in its efforts to contain the Rough Fire because it failed to carry out directives from the daily IAPs and the Wildland Fire Incident Management Field Guide (PMS 210) ("Wildland Field Guide"). (*Id.* at ¶¶ 13-16.) Plaintiffs allege the IAPs and Wildland Field Guide required the Forest Service to build contingency fire break lines, prepare structures, construct dozer lines to the east and south of the Kings Canyon Lodge, tie the dozer lines to the adjacent highway, call for "air attacks" from nearby helicopters carrying water, and enlist the assistance of the State of California Cal-Fire service. (*Id.*) Plaintiffs argue the failure to perform these actions caused the Rough Fire to spread and damage their property. (*Id.* at ¶ 32.)

In answering the complaint, the Government argues that regardless of whether the Forest Service personnel acted negligently, the Court lacks subject matter jurisdiction to hear the case because sovereign immunity shields the challenged conduct under the discretionary function exception. (Doc. 8 at 7.) Under the FTCA, whether the discretionary function exception applies is a threshold issue. *Parker v. United States*, 500 Fed. App'x 630, 631 (9th Cir. 2012). The Court, therefore, allowed the parties to proceed with limited discovery to address the jurisdictional issues related only to the discretionary function exception of the FTCA. (Doc. 12 at 1-2.) The Government moved for summary judgment on July 23, 2021. (Doc. 28.) Plaintiffs filed their opposition on August 6, 2021 (Doc. 29), and the Government subsequently filed its reply (Doc. 32) and objections to Plaintiffs' evidence (Doc. 33).

In their briefings, the parties include various factual and legal arguments related to the ultimate issue of negligence. Because the Court limited discovery to the jurisdiction question under the discretionary function exception, the Court only addresses those arguments properly before the Court on this motion for summary judgment.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. *Id.*; *see also*

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim…") (internal quotation marks, citation omitted).

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show genuine issue of a material fact exists. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors*

*Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.    EVIDENTIARY OBJECTIONS

On a motion for summary judgment, the Court should consider only admissible evidence but does not require documents to have a "proper foundation laid to authenticate them" at this stage. *Lindell v. Synthes, USA*, 155 F. Supp. 3d 1068, 1071-72 (E.D. Cal. 2016) (internal citation omitted). In addition, the court "cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Likewise, "improper legal conclusions ... are not facts and likewise will not be considered on a motion for summary judgment." *Id.* The parties made several objections to evidence submitted with the motion for and opposition to summary judgment.

**A.    Romero Report**

Plaintiffs object to the entirety of the Romero Report (Doc. 28-8) for two reasons. (Doc. 29 at 2-3.) First, Plaintiffs contend the Romero Report, cited by the Government in its statement of undisputed facts (Doc. 28-2), contains statements related to the elements of negligence, such as causation and negligent conduct. (Doc. 29 at 2.) Because the Court permitted discovery only related to the discretionary function exception, arguments and facts about to the ultimate issue of negligence are not properly before the Court at this stage. (Doc. 12 at 2-3.) Given that Plaintiffs

1  did not have an opportunity to conduct discovery on these issues, the Court finds it would be
2  unfairly prejudicial to Plaintiffs to consider these arguments, and any supporting evidence, on this
3  motion for summary judgment. *See In re Hanford Nuclear Rsrv. Litig. v. E.I. Dupont*, 292 F.3d
4  1124, 1134-35 (9th Cir. 2002) (holding the order bifurcating discovery precluded the court's
5  ruling on "individual causation" because the court had deferred discovery on this issue).
6  Accordingly, the Court will not consider any statements in the Romero Report that are not related
7  to elements of the discretionary function exception.

8        Plaintiffs also object to the Romero Report on the basis that Romero had no "direct
9  involvement in any of the events related to the Rough Fire." (Doc. 29 at 3.) The Government
10 argues that Romero, disclosed as an expert witness in this case, properly relied on "documents
11 and reports prepared to summarize fire response activities," and constitute the normal type of
12 evidence that experts in the field would reasonably rely upon when forming opinions. (Doc. 32 at
13 4 n.6.); *see also* Fed. R. Evid. 703. The Court agrees. The Federal Rules of Evidence do not
14 require experts to have "direct involvement" with the circumstances for which they form
15 opinions. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (emphasis added)
16 ("Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions,
17 *including those that are not based on firsthand knowledge or observation*."). Experts may rely on
18 facts or data that are themselves otherwise inadmissible "[i]f experts in the particular field would
19 reasonable rely on those kinds of facts or data in forming an opinion on the subject." Fed. R.
20 Evid. 703. Accordingly, the objection to the Romero Report on this basis is overruled.

21 **B.     Declaration of Lewis Evans**

22       The Government objected to various portions of Lewis Evans Declaration (Doc. 29-1).
23 (Doc. 33.) The Government primarily takes issue with statements in the Evans Declaration as
24 improper lay witness testimony. (*Id.*) For example, Objection No. 4 contends that because Lewis
25 Evans was not disclosed as an expert, the following statement improperly includes expert
26 opinions: "The hand crews did not complete nor finish the hand lines which were not tied into the
27 road/blacktop area (Highway 180), *the critical anchor point*, and also the dozer lines were not
28 tied into the road *which is a critical aspect for fire prevention*." (Doc. 33 at 3 (emphasis added).)

6

The Court agrees the italicized portion of this statement constitutes improper lay opinion evidence under Federal Rule of Evidence 701. *United States v. Lindsey*, 680 F. App'x 563, 566 (9th Cir. 2017) (holding lay witness testimony must be "rationally based on the witness's perception" and scientific, technical, or specialized knowledge does not qualify as proper lay testimony).

However, the statement in Objection No. 4 also contains proper lay witness testimony, such as factual observations regarding whether the hand crews completed the hand lines or tied them to the road or blacktop area. *United States v. Colwell*, 7 F. App'x 555, 557 (9th Cir. 2001) ("A lay witness may testify based on visual observations of conduct and may make reasonable inferences regarding that conduct."). The remaining statements to which the Government objects for improper lay testimony similarly contain a combination of proper factual statements and improper expert opinions. (*See e.g.*, Doc. 33 at 3 (Objection No. 6).) Accordingly, the Court will only consider the portions of the Evans Declaration based on proper lay witness testimony.

**C.      Remaining Objections and Conclusion**

Finally, Plaintiffs made a variety of objections to the statements and supporting evidence in the Government's statement of undisputed facts. (*See generally* Doc. 31.) In addition, the Government raised various other objections to Plaintiffs' evidence. (*See generally* Doc. 33.) Previously, this Court observed that "attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful, given the nature of summary judgment motions in general, and the facts of their cases in particular.*" Burch v. Regents of the Univ. of Cal.*, 433 F.Supp. 2d 1110, 1119 (E.D. Cal. 2006). In the interest of judicial economy, the Court declines to address each of the remaining objections. *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (observing "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised").

To the extent that statements offered by either party are speculative or represent a legal conclusion, the Court, as a matter of course, will not factor that material into the analysis. *See Burch*, 433 F. Supp.2d at 1119 ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered

on a motion for summary judgment") (citation omitted, emphasis in original). Rather, the Court's analysis relies on evidence only that it has deemed admissible and relevant to the merits of the motion for summary judgment, concerning whether the discretionary function exception applies.

### IV. DISCUSSION

**A. Discretionary Function Exception under FTCA**

A plaintiff typically cannot recover damages in a suit against the United States unless Congress expressly waived sovereign immunity via statute. *FDIC V. Meyer*, 510 U.S. 471, 474 (1994). The FTCA waives sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of their employment. *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008). The FTCA creates a cause of action against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, the FTCA provides various exceptions to this broad waiver of sovereign immunity, including the discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 321 (1991).

The discretionary function exception applies to "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception prevents judicial "'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015). The government bears the burden to prove the discretionary function exception applies. *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011).

The Supreme Court established a two-step test to determine whether the allegedly negligent conduct falls under the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). Step one considers "whether the challenged actions involve 'an element of judgment or choice.'" *Nieves Martinez v. United States*, 997 F.3d 867, 876 (9th Cir. 2021) (quoting *Gaubert*, 499 U.S. at 322). Step two evaluates whether "that judgment is the kind that

the discretionary function was designed to shield," that is, whether "the judgment involves considerations of social, economic, or political policy." *Id.* (internal citations omitted). The Government must show the inquiries under both steps are met for the exception to apply. *Terbush*, 516 F.3d at 1129.

**B.      Discretionary Function Bars Plaintiffs' Negligence Claims**

Plaintiffs' allegations of negligence pertain to various actions and non-actions by Forest Service employees while responding to the Rough Fire in August 2015. In the complaint, Plaintiffs make the following allegations of negligence: the crews did not construct proper hand lines on Plaintiffs' property (Doc. 1 at ¶ 14, 19); the firefighters failed to construct dozer lines to the east and south of the Kings Canyon Lodge (*id.* at ¶ 16); supervisors did not call for air attacks from helicopters carrying 2,000 gallons of water (*id.*); employees failed to tie bulldozer lines (fire breaks) around the Kings Canyon Lodge to the highway (*id.* at ¶ 17); and the Forest Service did not call State of California, Cal-Fire to enlist assistance (*id.*).

The Government contends the allegedly negligent conduct involves "decisions on how to respond to a massive wildland fire" and therefore, "fall squarely within the discretionary function exception." (Doc. 28-1 at 8.) Conversely, Plaintiffs maintain they do not challenge the design of the Forest Service plan to respond to the Rough Fire, but rather the implementation of that plan, which the exception does not cover. (Doc. 29 at 2, citing *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005).)

1.    Element of Judgment or Choice

Under the first step of the discretionary function analysis, the Court evaluates whether the challenged conduct is "discretionary in nature" such that it involves an "element of judgment or choice." *Gaubert*, 499 U.S. at 322. Conduct does not involve an element of judgment or choice where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536.

In the complaint, Plaintiffs point to the daily IAPs and the Wildland Field Guide as sources of policy or regulation that allegedly mandated certain fire suppression actions. (Doc. 1 at

¶¶ 14-16.) In its motion for summary judgment, the Government relies on Title 5100 of the Forest Service Manual to support its argument that only general guidelines exist to direct fire suppression operations. (Doc. 28-1 at 9.) In response, Plaintiffs argue the IAPs and Forest Service Manual provide sufficiently specific guidance. (Doc. 29 at 3-4, 9.) Plaintiffs did not, however, point to any section of the Wildland Field Guide to oppose summary judgment.

          a.    *Forest Service Manual*

Plaintiffs cite various sections of the Forest Service Manual to support its contention that no element of judgment or discretion existed. (Doc. 29 at 3-4.) For example, the Manual states that leaders must "ensure assignments are managed safely, effectively, and efficiently" ensure employees are "trained, certified, and made available to participate in the fire and aviation management program locally, regionally, and nationally." (*Id.* (citing Doc. 28-4 at 10, 13).) The Manual also directs employees to "prevent wildfire from reaching areas of structures and/or reducing the intensity of the fire that does reach structures." (*Id.* (citing Doc. 28-4 at 29.)

The sections cited by Plaintiffs, however, merely describe a broad purpose and general guidelines for the Forest Service to follow when conducting fire suppression operations. These provisions do not "dictate[] the precise manner" to manage assignments and personnel. *See Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010); *see also C.H. v. United States*, 528 F. Supp. 3d 1125, 1130-31 (E.D. Cal. 2021) (finding a federal regulation that required the National Park Service "to inspect and maintain trees near public roadways" did not "articulate specific methods for implementing these broad mandates, but rather set[] out only a general framework for national park management").

The Ninth Circuit previously rejected a plaintiff's attempt to rely on the Forest Service Manual to show a lack of discretion with fire suppression activities. In *Miller v. United States*, the plaintiff challenged the Forest Service's allegedly negligent failure to suppress a wildfire in eastern Oregon. *Id.*, 163 F.3d 591, 592 (9th Cir. 1998). The plaintiff relied on several portions of the Forest Service Manual, which required preparation of a "Mobilization Guide." *Id.* at 594. The Mobilization Guide mandated employees to, *inter alia*, "report a discovered wildfire and take appropriate action" and "assure sufficient initial attack forces are available within established

10

1 time standards." *Id.* The Ninth Circuit concluded the requirements, however, did not "eliminate discretion because they do not tell firefighters how to fight the fire." *Id.* at 595. The Court held an element of discretion existed where the regulations did not explain how to suppress the fire "in a specific manner and within a specific period of time." *Id.*

The portions of the Forest Service Manual cited by Plaintiffs outline general fire suppression techniques but fail to specify the manner or time to complete the tasks. Rather, the Manual expressly invites employees to exercise discretion while implementing the agency's policy objective. *See Esquivel v. United States*, 21 F.4th 565, 574 (9th Cir. 2021) (agreeing with the Government's assertion that "numerous provisions of the FSM… exude discretion by the Forest Service when determining how best to fight wildland fires"). The Manual's statement that "when it is time to fight fire, we do so in a manner that is appropriate, risk-based and effective" inherently calls for Forest Service personnel to exercise judgment to determine what "manner" is appropriate, risk-based, and effective. (Doc. 29 at 4 (citing Doc. 28-4 at 21).) The Manual further invites Forest Service personnel to exercise judgment in resource allocation by requiring "rapid deployment and concentration of wildfire response resources at the decisive time and place." (*Id.* (emphasis added)). This instruction requires federal employees to make decisions about when and where to deploy the wildfire resources. *See Miller*, 163 F.3d at 594-95 (the Mobilization Guide's statement that the response to a multiple fire situation "may vary depending on availability of resources" exemplifies the "inevitable competition for resources" in fire suppression operations).

Plaintiffs did not identify any portion of the Forest Service Manual that mandates how the Forest Service employees needed to respond to the Rough Fire. Specifically, nothing in the Manual—as cited by either party—contains directives on how, when, or whether to build fire lines, deploy air attacks, prep buildings, or call Cal-Fire. (*See* Doc. 1 at ¶¶ 14-19.) Accordingly, the Court finds the Forest Service Manual invites personnel to exercise judgment and does not specifically mandate a course of action.

    b.  *IAPs*

Plaintiffs also point to the daily IAPs as a source of agency policy for fire suppression operations. At most, Plaintiffs refer to the IAPs to say they instructed the "crew at the Lodge to

improve dozer line east to Kings Canyon Lodge" and to "evaluate and prep structures." (Doc. 29 at 8). However, Plaintiffs do not assert the IAPs establish a lack of discretion, mandated certain conduct, or otherwise relate to step one of the discretionary function analysis. Thus, Plaintiffs have waived reliance upon the IAPs due to their failure to raise any argument related to the IAPs. *See Zango v. Kaspersky Lab, Inc.,* 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party … are waived"); *see also In Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1110, n. 1 (9th Cir. 2000) (indicating the court "will not manufacture arguments" for parties).

### 2. Implications of Public Policy

Having found no policy mandated the allegedly negligent conduct, the Court turns to step two of the discretionary function test. The second step of the discretionary function test considers whether the judgment or choice, identified in step one, "is susceptible to policy analysis grounded in social, economic, and political policy." *Miller*, 163 F.3d at 595. The inquiry focuses on the "the nature of the actions taken" rather than on the government agent's subjective intent. *Gaubert*, 499 U.S. at 325. When the agent exercises discretion pursuant to the applicable statute, regulation, or agency guideline, "there is a strong presumption that the agent's acts are grounded in policy." *Id.* at 316. However, courts typically do not consider "matters of scientific and professional judgment" susceptible to policy analysis. *Whisnant*, 400 F.3d at 1181. On the other hand, the discretionary function exception generally shields the "design of a course of governmental action" but not the "*implementation* of that course of action." *Id.* (emphasis in original).

In the context of fire suppression operations, decisions on how to fight the fire typically implicate public policy concerns because they involve balancing of "cost, public safety, firefighter safety, and resource damage." *Miller*, 163 F.3d at 595. Policy concerns exist not only in planning and design of fire suppression operations, but also in implementation of these plans. *Woodward Stuckart, LLC v. United States*, 650 Fed. App'x 380, 383 (9th Cir. 2016). Departing from the general rule where implementation of a planned of course of action is not discretionary, the Court carved out an exception for cases involving fire suppression operations, because the "implementation itself implicates policy concerns." *Id.* (citing *Whisnant*, 400 F. 3d at 1182 n. 3) ("This court later explained that *Miller*'s holding constituted an exception to the

'design/implementation distinction.'").

In *Green v. United States*, the Court clarified that not all actions taken by the Forest Service automatically fall under the discretionary function exception. 630 F.3d 1245, 1251-52 (9th Cir. 2011). In *Green*, the plaintiffs did not challenge the "allocation of fire suppression resources," such as the allotment of "personnel during firefighting operations." *Id.* at 1252. The challenged conduct questioned the firefighter's failure to notify plaintiffs before and after lighting a backfire, used to combat an existing wildfire. *Id.* Although no regulation or guideline dictated the precise manner for notifying citizens of the decision to light the backfire, the decisions of when and whether to communicate this information were not susceptible to policy analysis. *Id.* The Forest Service did not present any evidence that its decision not to notify plaintiffs resulted from a balancing of communication resources and firefighting activities. *Id.*

In *Esquivel v. United States*, however, the Court drew a distinction from *Green*. 21 F.4th at 576. In *Esquivel*, the allegedly negligent conduct concerned statements made to the plaintiff regarding a controlled burnout of land near his property. *Id.* at 577. The Forest Service conducted the burnout as part of its efforts to suppress an active wildfire but allegedly acted negligently in its explanation to plaintiff about the firefighters' efforts. *Id.* at 569. The Court distinguished the case from *Green* where the Forest Service did not "take any action" to fight the wildfire and protect the homeowners' properties. *Id.* at 576-77. Whereas in *Esquivel*, the conversation with plaintiff about the burnout arose from implementation of fire suppression efforts because it occurred "during the course of preparing to deploy fire defensive measures." *Id.* The Court held the discretionary function exception applies and shields "all other conduct 'based upon the exercise or performance' of [fire suppression] operations." *Id.* (quoting 28 U.S.C. § 2680(a)).

Plaintiffs rely in part on *Green*, but also argue the Court should apply the analysis from a separate line of cases including *Whisant, Marlys Bear Medicine,* and *Nonouk*, which did not involve fire suppression operations. (Doc. 29 at 2.) Plaintiffs maintain that, under these cases, implementation of a design of course of action does not raise the same policy concerns as design of that course of action and therefore, is not shielded by the discretionary function exception. (*Id.*) As explained above and set forth by the Court in *Woodward*, the distinction between design and

13

implementation of a course of action does *not* apply in the context of fire suppression operations. *Woodward Stuckart*, 650 Fed. App'x at 383. Therefore, the authorities not involving fire suppression activities do not bear on Plaintiffs' case.

On the other hand, the Government relies primarily on *Miller* and argues that the crew fighting the Rough Fire had to balance safety considerations, the likelihood of success in applying certain suppression measures, and the allocation of resources to defend the Plaintiffs' property and all other assets in the vicinity. (Doc. 28-1 at 11 (citing the Romero Declaration).) According to the Government, these considerations "reflect the type of economic, social and political concerns that the discretionary function exception is designed to protect." (*Id.* (quoting *Miller*, 163 F.3d at 595 (internal quotations omitted)).)

Plaintiffs argue the holding in *Miller* does not apply to this case because, in *Miller*, resources "were already committed to other areas" making them unavailable to fight the fire that caused damage to plaintiff's property. (Doc. 29 at 8.) In contrast, Plaintiffs contend the Forest Service had sufficient resources and time to combat the Rough Fire. (*Id.* at 10.) Although Plaintiff's factual allegations may be true, this is a distinction without a difference, because the holding in *Miller* did not depend on the scarcity of resources. Rather, the Ninth Circuit refused to second guess the Forest Service's firefighting strategies because they "required consideration of fire suppression costs, minimizing resource damage and environmental impacts, and protecting private property." *Miller*, 163 F.3d at 596. In *Woodward*, the Ninth Circuit again confirmed the balancing of "competing fire-fighter safety and public safety considerations in deciding how to fight a forest fire" implicates public policy concerns. *See Id.*, 650 Fed. App'x at 383. Consequently, *Miller* and *Woodward* make clear any conduct based on the performance of fire suppression activities and decisions about allocation of these resources implicate policy concerns that courts should not second guess. *Miller*, 163 F.3d at 596 ("Our task is not to determine whether the Forest Service made the correct decision in its allocation of resources.")

Plaintiffs also rely on *Gaubert* to argue the ample supply of fire suppression resources to combat the Rough Fire distinguish the Forest Service's conduct from "the kind that the discretionary function exemption was designed to shield." (Doc. 29 at 10 (citing *Gaubert*, 499

U.S. at 322-23).) To the contrary, nothing in *Gaubert* indicates that the relative scarcity of resources impacts the discretion function analysis. Instead, in the context of fire suppression operations, the analysis turns on whether the allegedly negligent conduct occurred during the course of and was based on, the performance of fire suppression operations. *See Esquivel*, 21 F.4th at 576-77; *Green*, 630 F.3d at 1252.

Each of the negligent acts alleged by Plaintiffs are based on the performance of fire suppression activities and implicate public policy concerns. First, the alleged failure to construct proper fire lines, hand lines, and bulldozer lines are all techniques for suppressing a fire. (*See* Doc. 31 at ¶ 18; Doc. 28-6 at 12 (Weger Dep. at 37:7-14).) Determining how and where to construct the lines implicates some scientific and professional judgment to evaluate the vegetation in the area, the proximity of the fire, and the amount of time it takes to complete the task. (Doc. 31 at ¶ 49; Doc. 28-6 at 13 (Weger Dep. at 43:5-20).) Decisions regarding the number of Forest Service personnel and which equipment to allocate and where, trigger the traditional policy implications associated with fire suppression operations. (Doc. 31 at ¶ 51); *see also Kimball v. United States*, 2014 WL 683702, at \*\*6-7 (D. Idaho Feb. 20, 2014) (finding the balancing of factors such as the "cost, terrain, air support, equipment, water availability, demands of other fires, [and] timing out of firefighters are policy considerations" required discretion to allocate resources).

Second, the same analysis applies to the judgment involved in prepping buildings. Prepping buildings inherently includes some level of professional judgment such as to evaluate time needed to complete the tasks, the equipment needed to accomplish the task, and how to identify escape routes while working to protect the structures. (*See* Doc. 31 at ¶ 51; *see also* Doc. 1-1 at 51.) However, like with fire lines, the decision as to which buildings to prep, the personnel and equipment to assign to the buildings, and the time to spend on these tasks raise questions of community safety and allocation of resources. (Doc. 31 at ¶ 48, 51.); *see also Fang v. United States*, 140 F.3d 1238, 1243 (9th Cir. 2017) (finding decisions about what equipment to maintain at certain stations throughout the national park implicate policy concerns).

Likewise, the allegedly negligent act of not requesting aerial support from a nearby

helicopter is also based on the performance of fire suppression activities. In fact, the Wildland Incident Management Field Guide (PMS 210) expressly instructs firefighters to "conserve water" and "avoid wetting down an area." (Doc. 1-1 at 52.) The decision of where and when to deploy water suppression resources, therefore, necessarily arises from policy objectives regarding conservation of resources.

Finally, the decision not to call Cal-Fire for assistance is also based on the performance of fire suppression activities. The decision to enlist help from a state agency as part of the Forest Service's overall design to combat the Rough Fire occurred "during the course of preparing to deploy fire defensive measures." *See Esquivel*, 21 F.4th at 575. As such, the Court will not disturb the policy judgment of the Forest Service.

Because the undisputed facts show that all the allegedly negligent conduct occurred during the course preparing for and deploying fire defensive measures, the Court finds the Forest Service exercised discretion that implicates public policy concerns and therefore, satisfies step two of the discretionary function analysis.

## V.   CONCLUSION AND ORDER

The material, undisputed facts show the challenged Forest Service employees' conduct, as challenged by Plaintiffs, constitutes discretionary actions that implicate public policy, and the discretionary function exception applies. The Court lacks jurisdiction to hear the case because sovereign immunity shields the Government's liability. Therefore, the Court **ORDERS:**

1. Defendant's motion for summary judgment (Doc. 28) is **GRANTED**.
2. The Clerk of Court is directed to enter judgment in favor of Defendant; and
3. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 12, 2022**

UNITED STATES DISTRICT JUDGE

16